UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARY ANN MARKS,

        Plaintiff,

v.                                              Case No. 8:15-cv-769-T-24 TBM

SECRETARY OF
VETERANS AFFAIRS,

        Defendant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 48). Plaintiff opposes the motion. (Doc. No. 62). As explained below, the motion is granted in part and denied in part.

**I. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

**II. Background**

Plaintiff Mary Ann Marks began working for the VA Hospital in 1998 as a pharmacist. Around 2010, Plaintiff's co-worker, Kim Bui, filed an EEOC complaint. (Doc. No. 49, p.13–14). Plaintiff believes that she was a potential witness with respect to Bui's EEOC complaint, because Plaintiff thought Bui was a good pharmacist and Plaintiff provided Bui with moral support. (Doc. No. 49, p. 15). Additionally, when a supervisor[1] sent an email in connection with Bui's EEOC complaint asking Plaintiff to provide any negative information about Bui, Plaintiff responded that Bui was a good pharmacist who had been treated unfairly by her supervisors. (Doc. No. 49, p. 14–18; Doc. No. 62-2, ¶ 6–7). Plaintiff does not recall speaking with the EEOC on Bui's behalf. (Doc. No. 49, p. 19; Doc. No. 62-2, ¶ 7).

Plaintiff contends that after she gave this support to Bui, the staff at the VA Hospital started to retaliate against her. Plaintiff contends that this retaliation began in 2011, when she inquired about a residency program. (Doc. No. 49, p. 19–20). In response, Dr. Mowrey told Plaintiff that the residency program had been shut down because the person that headed the program (Nick Coblio) was retiring. (Doc. No. 49, p. 19–20, 24–25). Plaintiff contends that Coblio had not actually retired, but there is no evidence that the residency program continued running. (Doc. No. 49, p. 20–21, 25; Doc. No. 62-2, ¶ 8–11). Instead, Plaintiff contends that the residency program was shut down in order to deprive her of an opportunity to participate in it. (Doc. No. 49, p. 22).

---

[1] Plaintiff does not remember which supervisor sent the email, but she thinks it may have been Mario Torrez, Dr. Vose, or Michael McCormick. (Doc. No. 49, p. 16). Plaintiff states in her affidavit that she told her first-line supervisor that Bui was a good pharmacist who had been treated unfairly by her supervisors. (Doc. No. 62-2, ¶ 7). At that time, Mario Torrez was Plaintiff's first-line supervisor. (Doc. No. 49, p. 16).

2

Plaintiff contends that this retaliation over her support for Bui continued in 2012 and 2013. This retaliation included being denied a grade increase from GS-12 to GS-13, removing her ability to write unsupervised notes in patients' charts, twice denying her a promotion to an outpatient pharmacy supervisor position, conducting two inappropriate fact-findings against her in April and October of 2013, and failing to continue to appoint her as the pharmacist-in-charge. (Doc. No. 49, p. 28–78).

In 2013, Maria Castellanos and Freddy Tadros were made outpatient pharmacy supervisors and became Plaintiff's first-line supervisors. (Doc. No. 49, p. 52–53). Castellanos and Tadros reported to Michael McCormick. (Doc. No. 52, p. 4).

On November 15, 2013, Plaintiff filed a complaint with the VA Office of Resolution Management ("ORM"), in which she alleged that Castellanos and Tadros had retaliated against her by removing her as the pharmacist-in-charge due to her involvement in Bui's EEOC complaint. (Doc. No. 62-2, ¶ 19; Doc. No. 62-3, p. 2 of 30). On December 31, 2013, Plaintiff filed a more expansive charge of retaliation with the EEOC. (Doc. No. 62-2, ¶ 20; Doc. No. 62-3, p. 5–7 of 30). Plaintiff amended her EEOC charge on or about the following dates: March 14, 2014, April 21, 2014, May 12, 2014, June 6, 2014, and July 15, 2014. (Doc. No. 62-3, p. 15–19, 24–27; Doc. No. 62-4, p. 4–9, 21–26; Doc. No. 48-29, p. 3–8).

This first EEOC charge, as amended, was based on the following 34 incidents: (1) In April 2013 and October 2013, management conducted an improper fact-finding investigation against Plaintiff; (2) On October 1st and October 11th 2013, Tadros removed Plaintiff from her role as pharmacist-in-charge; (3) On November 21, 2013, Plaintiff was rated at fully successful and "an asset to our service" instead of a higher rating; (4) On November 27, 2013, management

conducted an improper fact-finding investigation against Plaintiff, which was based in part on Plaintiff's threat of legal action;[2] (5) On November 27, 2013, Tadros issued Plaintiff a written counseling and informed her that if she did not sign the written counseling (in order to close the fact-finding investigation of April 2013 and October 2013), the technicians would come after her; (6) On November 27, 2013, during a meeting, Tadros loudly called Plaintiff a "liar" before all of the attendees; (7) On December 6, 2013, a technician deliberately rolled a lundia[3] without warning in an attempt to crush Plaintiff between two lundias; (8) On December 11, 2013, Tadros scheduled another improper fact-finding investigation against Plaintiff with allegations identical to those in the November 27, 2013 fact-finding investigation; (9) Since July 2012, Plaintiff has requested to be rated a GS-13 but has been denied the grade increase; (10) On December 20, 2013, Tadros held an improper fact-finding investigation against Plaintiff when a union representative was not present, and the allegations were similar to the November 27, 2013 fact-finding meeting; (11) On January 17, 2014, Tadros excluded Plaintiff from an email offering other pharmacists overtime; (12) On January 18, 2014, Emergency Room Pharmacist Shanelle Hollis interfered with Plaintiff's work, yelled and screamed at her on the telephone, and accused Plaintiff of reporting Hollis late for work; (13) On January 24, 2014, Plaintiff was notified of a proposed admonishment based on the charge of failure to properly perform her duties; (14) On January 28, 2014, Plaintiff was notified that she was not selected for the Supervisor Clinical Pharmacist, GS-13, position; (15) On February 3, 2014, Plaintiff became aware that a pharmacy technician, Linda Mims, used Plaintiff's initials while reporting in the Problem Resolution

---

[2] (Doc. No. 48-6, p. 2)

[3] A lundia is a moving shelf.

System; (16) On March 3, 2014, Tadros issued Plaintiff a Letter of Admonishment based on the charge of failure to properly perform her duties; (17) On April 16, 2014, Tadros launched a fact-finding investigation against Plaintiff based on the false allegation that on April 14, 2014, Plaintiff failed to perform her duties and assist a veteran requesting a medication refill; (18) On April 2, 2014, Tadros launched a fact-finding investigation against Plaintiff based on the false allegation that she failed to perform her duties and correct an error in a narcotic prescription; (19) On or about April 24, 2014, Tadros informed Plaintiff that he was proposing a change to her work schedule from seven days on and seven days off, in order to assess her because of the alleged frequent complaints that he had received from staff about her over the preceding six months; (20) On April 25, 2014, Plaintiff was charged as AWOL for being absent on April 24, 2014 when she left to speak with the EEOC regarding her charge of retaliation;[4] (21) On April 25, 2014, Tadros initiated a fact-finding inquiry against Plaintiff for allegedly failing to perform her duties and for not assisting a veteran requesting a medication refill; (22) On April 28, 2014, when Plaintiff reported to management that Linda Mims was loud and abusive to her, Michael McCormick responded by accusing Plaintiff of refusing to assist a patient and of making poor decisions; Plaintiff contends that this was the reason her work schedule was changed; (23) On or about October 22, 2013, although an email was sent out to pharmacists indicating that Castellanos would be meeting with each pharmacist one-on-one to show them the new metric for tracking the workload, Plaintiff never received any one-on-one training and was not aware of any issues to be addressed until her removal from the Outpatient Pharmacy; (24) On April 28, 2014, McCormick issued a Memorandum to Plaintiff notifying her that her work schedule would

---

[4](Doc. No. 49, p. 127).

be changing effective May 18, 2014; this schedule change reduced Plaintiff's salary by approximately $20,000;[5] (25) On May 21, 2013, Tadros ordered Plaintiff to get out permanently from the Outpatient Pharmacy and to report to McCormick; (26) On or about May 22, 2014, McCormick accused Plaintiff of dropping 400 phone calls during the prior three weeks while she was out of state; (27) On May 27, 2014, Tadros presented Plaintiff with a fact-finding inquiry against her based on the allegations that on May 21, 2014, management received notice that she was hanging up on patients and thus failing to perform her duties and assist veterans, which constituted employee abuse of patients; (28) On May 28, 2014, Tadros suspended Plaintiff's pharmacist responsibilities, thus demoting her to a pharmacy technician working under the supervision of two pharmacy technicians; (29) On or about June 13, 2014, a co-worker threw two prescription bottles at Plaintiff, one of which hit her in the face; (30) On June 17, 2014, Plaintiff was prevented from participating in overtime; (31) On or about June 20, 2014, Tadros sent an email offering overtime opportunities to all pharmacists except for Plaintiff; (32) On or about July 1, 2014, Plaintiff was notified about a proposal to terminate her employment; (33) On or about July 8, 2014, Plaintiff learned that she was blocked from receiving emails sent to pharmacists and could only receive emails sent to pharmacy technicians; and (34) On or about July 11, 2014, Plaintiff was informed that she would be counseled for using an unoccupied workstation.

Plaintiff filed a second charge of retaliation with the EEOC on September 25, 2014. (Doc. No. 62-4, p. 32–35). In this charge, she makes allegations regarding the following 12 incidents: (1) Around the third week of July 2014, Joe Chuney, who thought Plaintiff had been

---

[5](Doc. No. 49, p. 133).

terminated, saw her and said words to the effect of, "now we can go after her again"; (2) On July 30, 2014, Plaintiff was excluded from another email sent to all pharmacists; (3) On or about July 31, 2014, Tadros inappropriately ordered Plaintiff to read over, analyze, and suggest amendments or changes to the VA Standard Operating Procedures No. 119-03; (4) On August 5, 2014, Tadros ordered Plaintiff unnecessarily to copy by hand the entire printed VA Standard Operating Procedures No. 119-03 with suggested changes; (5) On August 5, 2014, Tadros excluded Plaintiff from the opportunity for overtime and double pay to work on two holidays (Labor Day and Columbus Day), because of her present classification as a non-pharmacist; (6) On August 6, 2014, Tadros ordered Plaintiff unnecessarily to copy by hand the entire printed VA Hospital Policy Memorandum No. 138-18 with suggested changes; (7) On August 8, 2014, Tadros ordered Plaintiff unnecessarily to copy by hand the 158-page printed Hospital Policy Memorandum No. 11-49; (8) In a letter dated August 28, 2014, the Director sustained the charges in the June 27, 2014 proposed removal and suspended Plaintiff for seven calendar days; (9) On September 4, 2014, Plaintiff was advised that her scope of practice had been removed; (10) After filling out the application to reinstate her scope of practice, Tadros told Plaintiff that he would not sign off on it; (11) On or about August 14, 2014, and continuing thereafter, Plaintiff was deprived of the opportunity to work overtime because of her present classification as a non-pharmacist; and (12) On or about September 5, 2014, McCormick told Plaintiff that she could not resume her compressed work schedule, which she had been on since 2002.

      Plaintiff alleges in her complaint that there were many more amendments to these two EEOC charges (Doc. No. 18, ¶ 5), but those amendments do not appear to be filed with the Court. However, she does discuss one additional incident at length in her deposition testimony.

Specifically, on December 16, 2014, Tadros accused Plaintiff of using her phone to take a picture of an empty desk and claimed that the picture-taking violated VA policies.  (Doc. No. 49, p. 250–54).  As a result, Tadros called the police, and Plaintiff fled to the union.  (Doc. No. 49, p. 254–55).  The police went to the union and seized Plaintiff's phone.  (Doc. No. 49, p. 256).  Additionally, Castellanos and Tadros charged Plaintiff as being AWOL when she fled to the union.  (Doc. No. 62-2).  Plaintiff contends that she did not violate any VA policy by taking the picture and that others have done so without consequence.  (Doc. No. 49, p. 253–54; Doc. No. 62-2, ¶ 49–50).

On January 12, 2015, Castellanos wrote a memo to McCormick seeking Plaintiff's termination.  (Doc. No. 48-37, p. 4–5).  On March 18, 2015, the VA's Interim Director notified Plaintiff of the decision to terminate her employment, effective March 27, 2015.  (Doc. No. 48-39, p. 2–4).  Thereafter, Plaintiff filed the instant lawsuit.  However, her termination is not a part of this lawsuit.  (Doc. No. 62, p. 12).

In her amended complaint, Plaintiff asserts three claims: (1) retaliation under Title VII, (2) retaliatory hostile work environment, and (3) a claim for injunctive relief to enjoin the retaliatory practices.  Plaintiff contends that the retaliation began due to her support of Bui's EEOC complaint and then continued in response to her own EEOC complaints and amendments thereto.  (Doc. No. 49, p. 170–71).  Plaintiff identifies Castellanos, Tadros, and McCormick as the people in management that were retaliating against her.  (Doc. No. 49, p. 54).  Plaintiff further alleges that Tadros told her that he was going to have all of the pharmacy technicians go after her.  As such, Plaintiff is contending that Castellanos, Tadros, and McCormick, as well as her co-workers, have created a retaliatory hostile work environment.  (Doc. No. 49, p. 155).

### III. Motion for Summary Judgment

Defendant moves for summary judgment on all of Plaintiff's claims. Plaintiff asserts two substantive claims: (1) retaliation and (2) retaliatory hostile work environment. "Title VII prohibits an employer from retaliating against an employee who has 'opposed any practice made an unlawful employment practice by [Title VII]' or who has 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" Henderson v. FedEx Express, 442 Fed. Appx. 502, 506 (11th Cir. 2011)(quoting 42 U.S.C. § 2000e-3(a)).

In order to establish a prima facie claim of retaliation claim under Title VII, Plaintiff must show three things: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action. See id. With respect to the adverse employment action element, the Supreme Court has provided the following guidance:

> [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"
>
> We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace." An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. The antiretaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.

9

> We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings. . . .
>
> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."

Burlington Northern & Sante Fe Railway Co. v. White, 548 U.S. 53, 68–69 (2006)(internal citations omitted).

In order to establish a prima facie claim of retaliatory hostile work environment, Plaintiff must show four things: (1) she engaged in a statutorily protected activity; (2) she was subject to unwelcome harassment; (3) the harassment was based on her engaging in the protected activity; and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment. See Kelly v. Dunn & Bradstreet, Inc., 641 Fed. Appx. 922, 923 (11th Cir. 2016).

As previously stated, Defendant moves for summary judgment on all of Plaintiff's claims. Because the Court is required to view the evidence in the light most favorable to Plaintiff and to accept her testimony as true, the Court must deny Defendant's motion in large part.[6] However, to the extent that Defendant moves for summary judgment as to the alleged

---

[6]The Court cautions Plaintiff that she should not read into this Court's denial of Defendant's motion as implicitly finding that Plaintiff has a strong, or even a good, case. The Court has read through the depositions submitted in this case, which provide a much better picture than that set forth in the parties' filings, which are subject to strict page limits. The sheer

retaliation and retaliatory hostile work environment based on Plaintiff's support of Bui, Defendant's motion for summary judgment is granted, as explained below.

Plaintiff contends that Defendant retaliated against her in 2012 and 2013 (prior to her complaint to the ORM) based on her support of Bui and that this retaliation included ending the residency program, denying her a grade increase from GS-12 to GS-13, removing her ability to write unsupervised notes in patients' charts, twice denying her a promotion to an outpatient pharmacy supervisor position, conducting two inappropriate fact-findings against her in April and October of 2013, and failing to continue to appoint her as the pharmacist-in-charge. Defendant argues that it is entitled to summary judgment on all alleged retaliation that occurred prior to Plaintiff's November 15, 2013 complaint to the ORM for many reasons, including the fact that these alleged retaliatory acts occurred too long after Plaintiff's alleged support of Bui. The Court agrees with Defendant on this issue.

The Court assumes for the purposes of Defendant's motion that Plaintiff can establish two elements: (1) that Plaintiff's 2010 support of Bui to management in response to their email soliciting negative information in order to defend against Bui's EEOC complaint was a protected activity; and (2) that the 2011 elimination of the residency program was an adverse employment

---

number of events that Plaintiff complains of after November of 2013 makes it nearly impossible for Defendant to sufficiently explain in a 25-page motion for summary judgment why its actions (and those of its employees) were not retaliatory.

Furthermore, at this stage of the proceedings, the Court must accept Plaintiff's version of the events, even when her version appears highly unlikely or exaggerated. For example, one of the events that occurred in this case is that Tadros accused Plaintiff of hanging up on veterans hundreds of times. When asked about this in her deposition, Plaintiff contends that these were accidents due to Defendant's failure to properly train her on how to use the phone system and that she believed that she was transferring the phone calls when she hung up the phone. (Doc. No. 49, p. 140–49).

action. However, Plaintiff cannot show a causal connection exists between her protected activity and the elimination of the residency program.

As explained by one court:

> To establish causation, a plaintiff must show that: (1) the decisionmakers were aware of his protected conduct and (2) his protected activity and the adverse employment action were not wholly unrelated. Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated. If there is a delay of more than three months between the two events, then the temporal proximity is not close enough, and the plaintiff must offer some other evidence tending to show causation. Intervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action.

Henderson, 442 Fed. Appx. at 506 (internal citations omitted). Here, it does not appear that a close temporal proximity of less than three months existed. Plaintiff states in her deposition that the time-frame in which she supported Bui was around 2010 and that she inquired about the residency program and was told that it was eliminated in 2011. She does not provide any specific dates for either of these acts, and as such, there is no evidence to show that a causal connection exists between her support of Bui and the elimination of the residency program.

The Court notes that after Defendant raised this issue in its motion for summary judgment, Plaintiff filed an affidavit in which she now states that her support of Bui occurred in 2011. (Doc. No. 62-2, ¶ 5). Plaintiff, however, fails to explain what caused her to now believe that her alleged protected activity occurred in 2011 rather than 2010. Instead, it appears to this Court that Plaintiff submitted this assertion in her affidavit (which conflicts with her earlier deposition testimony) solely as an attempt to save her retaliation claims. The Court is not willing to consider this contradictory allegation in the affidavit that appears to be included solely

12

to create a genuine issue of fact. See Bryant v. U.S. Steel Corp., 428 Fed. Appx. 895, 896 (11th Cir. 2011)(stating that "[a] district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation"); Williams v. Cleaver-Brooks, Inc., 2012 WL 6151141, at *13 (M.D. Ga. Dec. 11, 2012)(refusing to credit a conflicting affidavit that supplied the allegations necessary to state a prima facie claim of retaliation).

Furthermore, even if the Court accepted that Plaintiff supported Bui in 2011 and the residency program was also eliminated in 2011, there is no evidence showing that these two acts occurred less than three months apart. Furthermore, Plaintiff contends that Dr. Mowrey told her that the residency program was eliminated, but there is no evidence before the Court that Mowrey was aware of Plaintiff's support for Bui such that he could have retaliated against her for that support. Thus, Plaintiff's retaliation claim based on the elimination of the residency program fails.

Likewise, Plaintiff's retaliation claim based on the remaining alleged adverse acts that occurred prior to her complaint to the ORM—denying her a grade increase from GS-12 to GS-13, removing her ability to write unsupervised notes in patients' charts, twice denying her a promotion to an outpatient pharmacy supervisor position, conducting two inappropriate fact-findings against her in April and October of 2013, and failing to continue to appoint her as the pharmacist-in-charge—also fail due to a lack of temporal proximity, as all of these events occurred in 2012 and 2013—far more than three months after her support for Bui. Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's retaliation and retaliatory hostile work environment claims to the extent that they are based on conduct that

occurred prior to November 15, 2013—the date Plaintiff filed her retaliation claim with the ORM.

## IV.  Conclusion

Based on the above, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion for Summary Judgment (Doc. No. 48) is **GRANTED IN PART AND DENIED IN PART**: The motion is granted to the extent that Plaintiff's retaliation and retaliatory hostile work environment claims are based on conduct that occurred prior to November 15, 2013—the date Plaintiff filed her retaliation claim with the ORM.  Otherwise, the motion is denied.

(2) All pretrial motions, including motions in limine, must be filed by December 15, 2016.  Each party may file *one* motion in limine containing all of their arguments in a single document not to exceed 25 pages.  Responses thereto must be filed by December 29, 2016.

(3) The parties' joint pretrial statement must be filed by January 5, 2017.

**DONE AND ORDERED** at Tampa, Florida, this ___ day of November, 2016.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record